OPINION OF THE COURT
Steven L. Barrett, J.
On May 15, 2013, this court orally granted defendant’s motion to dismiss the indictment and granted the People leave to re-present the case to another grand jury based upon the prosecution’s faulty instruction to the grand jury with respect to the defense of justification. This decision both formalizes and amplifies the court’s oral decision.
Prior to ruling on May 15th, this court reviewed all of the evidence presented to the grand jury, including the testimony of 28 witnesses and the exhibits that were received in evidence. It is clear from the evidence presented that the dispositive issue before the grand jury was whether the defendant, Police Officer Richard Haste, was justified in shooting the victim, Ramarlay Graham. On this crucial issue, the grand jury heard testimony regarding Haste’s and Graham’s words and actions just prior to the shooting, as well as testimony concerning a series of radio transmissions overheard by Haste, in which fellow officers who were part of Haste’s team on the day of the fatal shooting broadcast that they saw Graham in possession of a firearm.
After the presentation of the evidence, the prosecutor instructed the grand jury on the law of justification; specifically, when a person, and when a police officer, may be justified in using deadly physical force. The prosecutor recited verbatim the subjective and objective components of the test for when the use of deadly force is justified as provided in the Criminal Jury Instructions (see MT: 12-16).[1] After completing the Criminal Jury Instruction on the use of deadly physical force, the prosecutor added the following language: “What controls here is not the reasonableness of the belief of other police officers or their communications to Police Officer Haste. What controls on the issue of justification is the reasonableness of Police Officer Haste’s conduct at the time of the shooting that controls the issue in this case” (see MT: 17).
*598 The prosecutor then finished the justification section of the charge by telling the grand jury that “if you find that the actions of Police Officer Haste were justified, you should vote no true bill” (see MT: 17). She then instructed the grand jury on the law of manslaughter in the first and second degrees, and the grand jurors began their deliberations (see MT: 17-19). Sometime thereafter, the grand jurors informed the prosecutor that they wanted to again hear the instruction on justification (see MT: 21). The prosecutor then repeated the charge she had previously given, including the above-quoted passage (see MT: 27), and again instructed the grand jurors that if they found the actions of Officer Haste to be justified, they should vote no true bill (see MT: 27). Immediately thereafter, prior to resuming deliberations, a grand juror requested the prosecutor to repeat “the last part . . . about the communications of other officers” (see MT: 27). The prosecutor repeated, “it is not the reasonableness of the beliefs of other officers that was communicated to Police Officer Haste that controls the issue of justification, it is the reasonableness of Police Officer Haste’s conduct at the time of the shooting that is the issue [that] controls the issue of justification” (see MT: 27). The prosecutors then exited the grand jury room and the grand jurors resumed their deliberations. Sometime thereafter, the grand jury notified the prosecutors that they had voted to indict defendant on both charges, rejecting the defense of justification (see MT: 28).
The primary function of the grand jury is to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject him or her to criminal prosecution. (People v Calbud, Inc., 49 NY2d 389, 394 [1980].) In light of the role of the grand jury in our system, the rules regarding the instructions to grand juries have evolved. It is now axiomatic that a grand jury need not be instructed with the same degree of precision as a petit jury; however, when the instructions are so incomplete or misleading that they undermine the grand jury’s function to protect citizens from potentially unfounded prosecutions, a court is justified in dismissing the indictment on grounds that the grand jury’s integrity has been impaired. (See People v Calbud, 49 NY2d at 394-396.)
Here, the paragraph that the prosecutor inserted after she recited the Criminal Jury Instruction on the justifiable use of deadly physical force was both incomplete and had the unintended effect of misleading the grand jury — as I referenced in my oral opinion, an error of omission as well as of commission. *599 With respect to the first sentence of the troublesome passage, the prosecutor stated that “what controls here is not the reasonableness of the belief of other officers or their communications to Police Officer Haste” (MT: 17, 27 [emphasis supplied]). When the words of this sentence are scrutinized closely, the unavoidable conclusion is that the grand jurors were led to believe that the communications of fellow officers to Police Officer Haste were of no consequence to the claim of justification. Thus, contrary to the People’s contention, this instruction was tantamount to telling the grand jury that, in deciding whether Haste’s beliefs at the time of the shooting were reasonable and thereupon whether his actions were justified, they were not to consider any communications of the fellow officers to Haste regarding their alleged observation of Graham with a gun. This was error; the communications to Police Officer Haste were clearly relevant in determining whether Officer Haste reasonably believed that deadly force was necessary to defend himself, and therefore was not a matter that should have been removed from the grand jury’s consideration.[2]
Moreover, in the following sentence of this passage, the People compounded their initial mistake with a second mistake by omitting to instruct at this juncture that Haste’s reasonable belief, not just his conduct, should be assessed. The prosecutor stated, “what controls on the issue of justification is the reasonableness of Police Officer Haste’s conduct at the time of the shooting” (MT: 17, 27). Although this statement was unequivocally true, it painted an incomplete picture of what needed to be conveyed to the grand jury in order to assure that they would properly evaluate whether Haste’s use of deadly force was justified. Thus, in conjunction with focusing on Police Officer Haste’s conduct, the prosecutor should have explained to the grand jury that the focal point of their deliberations on this issue should be the reasonableness of Police Officer Haste’s belief at the time of the shooting, specifically as to whether he reasonably believed that the use of deadly physical force was necessary to defend himself. By addressing only Haste’s conduct, while omitting a *600 reference to the reasonableness of his belief, the prosecutor misdirected the inquiry into whether Haste’s belief that the use of deadly force was necessary to defend himself was reasonable.[3] (See People v Goetz, 68 NY2d 96, 115 [1986] [although the Court found that the integrity of the grand jury was not impaired by the prosecutor’s charge on justification, the Court acknowledged that it was error when the prosecutor failed to elaborate on certain evidence which was relevant to the reasonableness of Goetz’s belief that the use of deadly force was necessary].)
Although the above-described instructions were two sentences amongst many on the law of justification, the court cannot ignore their impact. When the prosecutor told the grand jury, in essence, not to consider the communications of fellow officers overheard by Haste, it misled them on the issue that was at the very heart of the case. And, when the prosecutor failed to instruct affirmatively that the grand jury could and should consider these communications in connection with Haste’s belief upon being presented with a final opportunity to do so, this omission was fatal. Not only was the flawed language germane to the central issue to be determined by the grand jury, but, quite clearly, the grand jurors in their deliberations were focused upon it, a point made clear in that the grand jury asked to be re-instructed on justification, and then on the law regarding how to evaluate the communications of Haste’s fellow officers. Given the magnitude of the error and the centrality of the defective instruction to the grand jury’s deliberations, the integrity of the grand jury was impaired and defendant was prejudiced by this error. (See CPL 210.35 [5]; see also People v Pena, 169 Misc 2d 75 [Sup Ct, Bronx County 1996, Donnino, J.] [improper grand jury instruction on the law of justification impaired integrity of grand jury].)
*601 The defective instruction was not harmless error, but neither was it an intentional error nor was it made in bad faith. This is obvious when the two flawed sentences are placed in context. Just prior to the inappropriate language, the prosecutor instructed the grand jury that “it does not matter that Police Officer Haste was or may have been mistaken in his belief [that deadly physical force was necessary to defend himself], provided that such belief was honestly held and reasonable” (see MT: 16-17). Thus, when the prosecutor went on to state that “what controls here is not the reasonableness of the belief of other police officers or their communications to Police Officer Haste,” it appears that she was seeking to ensure that the grand jurors still considered the justification defense, even if they rejected the testimony of the fellow officers regarding the observation of Graham in possession of a firearm. Though the words may have been designed to give defendant a benefit, they had the opposite effect, and so impaired the integrity of the grand jury that the indictment must be dismissed. (See CPL 210.20 [1] [c].)[4] However, the court finds a lack of improper intention or bad faith on the part of the prosecution, and therefore the court grants the prosecution leave to re-present the evidence to another grand jury. (See CPL 210.20 [4].)
Accordingly, defendant’s motion to dismiss the indictment is granted with leave to re-present the evidence to another grand jury.

. The prosecutor also included language not in the Criminal Jury Instructions pertaining to a police officer’s use of deadly physical force as provided in Penal Law §§ 35.30 and 35.15 (2) (a) which is not at issue here (see MT: 14-15).

. The first clause in this sentence which instructed the grand jurors not to consider the reasonableness of the belief of other police officers was mere surplusage. The reasonableness of the fellow officers’ belief regarding Graham’s possession of a gun is simply irrelevant to the central inquiry at issue which is the reasonableness of Haste’s belief regarding the necessity of using deadly physical force to defend himself, based on the effect of his hearing the aforesaid radio transmissions as well as his own observation of Graham’s actions.

. The People’s argument that their earlier instruction on the objective component of the test for justification cured this defect is unavailing. The prosecutor instructed that in evaluating whether Haste was justified in using deadly physical force, the grand jury should consider whether “a reasonable person in Police Officer Haste’s position, knowing what Police Officer Haste knew and being in that same circumstance, would have believed that too” (see MT: 13, 16, 23, 25-26). That instruction was confined to the objective component; whereas the defective language pertains to the subjective component as to whether an actor actually has a reasonable belief that another is about to use deadly force against him. Moreover, the language itself focuses the inquiry on what Haste knew at the time of the shooting, as opposed to the true central issue of what Haste reasonably believed at the time of the shooting.

. It is also worth noting that although at the outset of the charge the prosecutor correctly stated that Police Officer Haste is not required to prove that he was justified and that the People are required to prove that Police Officer Haste was not justified (see MT: 11), she twice shifted the burden of proof when she instructed the grand jury to vote no true bill “if they find that the actions of Police Officer Haste were justified” (see MT: 17, 27).